Argued March 31; affirmed April 14; rehearing denied May 12, 1931

# HENNIG *v.* CARSTENS PACKING CO.

(297 P. 1055)

*M. B. Meacham,* of Portland, for appellant.
*G. G. Smith,* of Portland, for respondent.

CAMPBELL, J.  This is a common law action by a servant against his master for damages for personal injury received in the course of his employment.

The plaintiff is a man about 29 years of age, and was employed by defendant as a truck driver delivering meats to the different customers of defendant.  On October 9, 1929, it became necessary to repair the truck

used by plaintiff, and it was laid up for that purpose. On October 10, plaintiff was directed by defendant to do some work about the shipping room, wrapping up parcels, weighing up meat, and assisting in loading trucks. The defendant is a corporation, engaged in the wholesale meat business in Portland, Oregon. Its place of business is located at 105 Front street, where it maintains a large cooling room where it stores its meats, and from which it supplies its customers. Between the cooling room and the street is a smaller room, about 30 feet long and 20 feet wide, designated as the shipping room. In the shipping room the meats are prepared for delivery by trimming, weighing, checking, and wrapping. The meats are conveyed from the cooling room to the shipping room by a mechanical device consisting of an overhead track whereon is operated movable hooks upon which the parcels of meat are hung. In the shipping room the meat is removed from the hook, weighed and trimmed of unsightly portions, checked and returned to the hook.

On the day of the injury, plaintiff was instructed to carry a quarter of beef, weighing about 150 pounds, from the cooling room to a truck backed up to the curb in the street in front of the building. He alleges that on this particular morning, the floor was dirty and slippery by reason of all the trimmings from the meat being allowed to remain on the floor over which he had to pass in delivering the meat to the truck. That while carrying this heavy quarter of beef, he stepped on a chunk of fat, and slipped and fell, sustaining the injury complained of. The act of negligence of the defendant which he alleges as the proximate cause of his injury was "in allowing and permitting grease,

fat, tallow, meat trimmings, blood, marrow and bone cuttings to fall upon, accumulate on, and to remain on the floor of said premises."

The defendant in his answer denies all the allegations of negligence on its part, and injury to plaintiff, and as an affirmative defense alleged "that the condition of the place, where plaintiff was working, was open and obvious to the plaintiff at all times, and that plaintiff was at the time of the alleged injury, and for a long time prior thereto, acquainted with the conditions of the place wherein he was working, and after acquiring such knowledge and with full appreciation of the risks and dangers incident thereto, the plaintiff continued to work in said place voluntarily and at his own risk without compulsion by defendants." Plaintiff thereafter filed his reply denying the new matter in the answer.

The case was tried to a jury. At the close of plaintiff's case in chief, defendant moved for a nonsuit which motion was denied. Again at the close of all the testimony in behalf of both parties, defendant moved for a directed verdict which motion was also denied. The case was submitted to the jury, and a verdict in favor of plaintiff returned on which judgment was entered. From this judgment this appeal is taken. There were no exceptions taken to any of the rulings of the court on the admission of evidence, nor to any of the instructions given. The only assignment of error is that the court erred in not granting a nonsuit, and in refusing to direct a verdict in favor of defendant.

We need not concern ourselves with the refusal to grant a nonsuit, for the same questions are presented

in the refusal to direct a verdict. The motion for a directed verdict was based on the grounds "that there was no actionable negligence on the part of the defendant, and that the evidence showed indisputably that it had done everything that it possibly could to make the floor and conditions safe, and that no evidence of actionable negligence on the part of the defendant was received which was proximately connected with the accident, and that the evidence showed without any dispute that plaintiff knew the condition of the premises and that he assumed all the risks involved in his work."

The testimony of the plaintiff is to the effect, that at about six o'clock in the morning the employees of the defendant began trimming meats and wrapping up parcels ready for delivery. The trimmings were dropped on the floor and remained there until the time he was hurt, between nine and ten o'clock. That the floor had not been cleaned for some time. That he was working under the orders of some one of the other employees. That the employees were in a hurry to get the orders out on time. That the piece of fat on which he slipped came from the meat "we trimmed." Undoubtedly he meant meat which was trimmed by the men who were at work. It is common observation that the employees of a corporation generally refer to themselves as a part of the corporation. Further on in his testimony, he makes the statement that meat was sometimes obtained from where "we slaughtered," yet it appears that individually he neither did any slaughtering nor even assisted in the process.

Under this state of the evidence it was a question of fact to be submitted to the jury under proper instructions from the court.

■ The defense of negligence of a fellow servant is not pleaded so that we must assume some one of the other men who was present must have been a vice-principal directing the work, and the knowledge of the vice-principal is imputed to the master. Counsel for appellant has presented a very able brief on the duties of a master, as well as the responsibilities of the servant. The law making it the duty of the master to furnish a reasonably safe place for the servant to work is well settled, and a restatement thereof or an analysis of the reasons for the doctrine would be to "gild refined gold, etc." The law defining the risks the servant assumes when he enters, and while remaining in, the service of the master is equally well determined, and it is only necessary to cite *Johnson v. O.-W. R. & N. Co.*, 126 Or. 85 (268 P. 985), for a complete exposition of the law on this phase of the case.

■■ Reasonable minds might differ as to whether the master discharged his duty in furnishing a safe place for the servant to work, in allowing the slippery condition of the floor to exist from seven o'clock till nine o'clock. Reasonable minds might differ as to whether the condition of the floor was obvious and open to the servant while being hurried in the work he was doing.

The evidence touching on both these propositions was contradictory. The court submitted these matters to the jury under proper instructions as to the duty of the master and the assumption of the risk by the servant.

Finding no error it follows that the judgment should be affirmed and it is so ordered.

BEAN, C. J., BROWN and BELT, JJ., concur.